## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

KEVIN DWAYNE FLETCHER,
*Inmate Identification No. 341-134*,

      Petitioner,

      v.

RICHARD E. MILLER,
*Acting Warden of North Branch Correctional
Institution*, and
THE ATTORNEY GENERAL OF THE
STATE OF MARYLAND,

      Respondents.

Civil Action No. TDC-15-0051

## MEMORANDUM OPINION

On January 7, 2015, Kevin Dwayne Fletcher, who is currently incarcerated at the North

Branch Correctional Institution ("NBCI") in Cumberland, Maryland, filed a Petition for a Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254.  Fletcher seeks to collaterally attack his 2005

conviction for first-degree murder and use of a handgun during a crime of violence.  On

February 20, 2015, Respondents Acting Warden Richard E. Miller of NBCI ("the Warden") and

the Attorney General of the State of Maryland (collectively, "Respondents") filed a Limited

Answer, asserting that Fletcher's Petition is time-barred under 28 U.S.C. § 2244(d) and should

be dismissed.  On February 24, 2016, Fletcher filed a Motion to Add Exhibits to supplement his

Petition, which the Court now grants.  For the reasons set forth below, the Court finds that

Fletcher's Petition is not time-barred under the doctrine of equitable tolling and directs

Respondents to file a supplemental Answer addressing the merits of Fletcher's Petition.

## BACKGROUND

On January 29, 2007, the Circuit Court for Baltimore City, Maryland sentenced Fletcher to life imprisonment plus 20 years after Fletcher had pleaded guilty to first-degree murder and use of a firearm during a crime of violence. Fletcher directly appealed to the Maryland Court of Special Appeals, claiming that his guilty plea "was not a voluntary decision because but for the coerced confession, Petitioner would not have pled guilty." Pet. at 2, ECF No. 1.[1] The Court of Special Appeals denied his appeal and issued its mandate on June 28, 2007. Fletcher did not file a petition for a writ of certiorari with the Maryland Court of Appeals or the United States Supreme Court.

## I.    The Petition for Post–Conviction Relief

On July 30, 2007, Fletcher filed a *pro se* Petition for Post–Conviction Relief with the Circuit Court for Baltimore City.[2]   Fletcher once again claimed that his guilty plea was involuntary and asserted that he received ineffective assistance of counsel. After Fletcher filed his Petition for Post–Conviction Relief, he secured Mark Gitomer as counsel. On July 13, 2009, Fletcher filed an Amended Petition for Post–Conviction Relief through Gitomer. The Circuit Court denied Fletcher's Petition on September 22, 2009. Fletcher then filed a Motion to Alter or Amend Judgment on October 26, 2009, which the Circuit Court denied on December 2, 2009.

---

[1]   Citations are to the page numbers in the original documents. When exhibits do not have page numbers, or contain multiple sets of page numbers, citations are to the page numbers assigned by the Court's Case Management/Electronic Case Files system ("CM/ECF"). For example, the page numbers associated with the Petition are those assigned by CM/ECF because there are multiple sets of page numbers.

[2]   Although Fletcher asserts that he filed his Petition for Post–Conviction Relief on July 30, 2007, the Circuit Court's memorandum denying the Petition states that it was filed on August 27, 2007. Respondents claim that Fletcher filed his Petition for Post–Conviction Relief on August 29, 2007. Because the Circuit Court docket cited by Respondents states that the "Petition was actually fld. on 07/30/07," Cir. Ct. Docket at 7, 1st Ans. Ex. 1, ECF No. 5-1, the Court will use the July 30, 2007 date in this Opinion.

On January 4, 2010, Fletcher filed an Application for Leave to Appeal, which the Court of Special Appeals denied on March 24, 2011. The court issued its accompanying mandate on June 16, 2011.

Fletcher did not learn that the Court of Special Appeals denied his Application for Leave to Appeal until sometime in August or September 2012. On April 25, 2010, Fletcher had written to Gitomer to ask about his Application for Leave to Appeal. On August 1, 9, and 15, 2010, Fletcher again wrote to Gitomer, each time asking for his case file. In his August 1, 2010 letter, Fletcher wrote to Gitomer that "you no longer represent me." Second Gitomer Letter, Pet. Ex. 4, ECF No. 1-5. On January 4, 2011, Fletcher wrote to Gitomer again asking for the case file and this time inquiring about "the timeline for a response on the Leave to Appeal." Fifth Gitomer Letter, Pet. Ex. 7, ECF No. 1-8. On March 22, 2011, Fletcher wrote to Gitomer one last time asking for the case file and stated, "I've been writing you requesting this file since March/April of 2010 & you haven't even responded." Sixth Gitomer Letter, Pet. Ex. 8, ECF No. 1-9. On December 11, 2011, after failing to receive a response from Gitomer, Fletcher wrote to the Court of Special Appeals asking for a "status update" on his Application for Leave to Appeal. First Md. Ct. Spec. App. Letter, Pet. Ex. 10, ECF No. 1-11. There is no record of any response to this letter.

Throughout this time period, Fletcher sought legal representation or to advance his case on his own. While Fletcher was writing to Gitomer asking for his case file and for updates on his Application for Leave to Appeal, he also wrote a letter to the Baltimore Police Department asking for "any and all notes/reports concerning suspension, allege misconduct, resignation information" to which the Department responded on March 28, 2011. Baltimore Police Dep't Letter, Pet. Ex. 9, ECF No. 1-10. In addition, after Fletcher wrote to the Mid-Atlantic Innocence

Project seeking counsel, the Innocence Project visited him at NBCI but then sent him a letter on January 24, 2012 in which it declined to represent Fletcher because he was "currently represented by a lawyer who has filed a post-conviction petition on your behalf." Innocence Project Letter, Pet. Ex. 11, ECF No. 1-12.

On August 14, 2012, Fletcher sent a complaint to the Attorney Grievance Commission of Maryland regarding Gitomer. On August 29, 2012, the Commission wrote back to Fletcher, informing him that Gitomer had been disbarred. Indeed, on July 26, 2012, the Attorney Grievance Commission of Maryland and Gitomer had filed a Joint Petition for Disbarment by Consent with the Court of Appeals, which stated:

> Multiple complaints are currently pending before the Attorney Grievance Commission of Maryland, in which it is alleged that the Respondent failed to represent his clients with reasonable diligence and promptness, failed to communicate with them concerning the status of their matter, failed to maintain his unearned fees in escrow, and misappropriated funds from his escrow account in violation of Maryland Rules of Professional Conduct 1.3, 1.4(a)(2)(3), 1.15(a), 8.4(c)(d), Maryland Rule 16-609, and Business Occupations and Professions Article § 10-306.

Joint Pet. for Disbarment by Consent, Pet. Ex. 23, ECF No. 1-24. On August 1, 2012, the Court of Appeals issued an Order disbarring Gitomer. *See Attorney Grievance Comm'n v. Gitomer*, 49 A.3d 333, 333 (Md. 2012).

In the same time frame, on August 12, 2012, Fletcher again wrote to the Court of Special Appeals to seek a "status update" on his Application for Leave to Appeal. Second Md. Ct. Spec. App. Letter, Pet. Ex. 12, ECF No. 1-13. The Court of Special Appeals responded by sending him an August 17, 2012 printout of the docket containing an entry stating that his Application was denied on March 24, 2011, which Fletcher received on September 4, 2012. That same day, Fletcher wrote back to the Court of Special Appeals, stating that his attorney had been disbarred, asserting that he had never received a copy of the decision, asking how he could get a copy of the

decision, and seeking guidance because he did not want to lose the opportunity for further appeal. On September 6, 2012, Fletcher wrote to the Maryland Attorney General asking for a copy of the opinion, which the Attorney General forwarded to him with a letter dated September 13, 2012. On September 18, 2012, Fletcher filed a Motion to Reissue Opinion with the Court of Special Appeals. On October 2, 2012, the Court of Special Appeals sent him a copy of the opinion and the mandate but did not formally reissue the opinion.

## II.    The Motion to Reopen

After learning that Gitomer had been disbarred and that the Court of Special Appeals had denied his Application for Leave to Appeal, Fletcher wrote to the Maryland Office of the Public Defender on May 16, 2013 to request representation in filing a Motion to Reopen his post–conviction proceedings. The Office of the Public Defender responded on July 1, 2013, stating that it was "willing to assign an attorney to review your case" but that "it will probably take several years." Second Public Defender Letter, Pet. Ex. 19, ECF No. 1-20. Fletcher responded on July 4, 2013, stating that his "main goal in raising these allegations in the Motion to Reopen [is] to preserve these allegations for Federal Court" and that if "waiting for your office to represent me will interfere with filing my Federal Habeas Corpus, then I just cannot take that risk." Third Public Defender Letter, Pet. Ex. 20, ECF No. 1-21.

On August 16, 2013, Fletcher mailed a *pro se* Motion to Reopen Closed Post Conviction Proceeding and Request for Hearing ("Motion to Reopen") to the Circuit Court for Baltimore City, which was docketed on August 26, 2013. In the motion, Fletcher once again asserted that his guilty plea was involuntary and that he received ineffective assistance of counsel from his trial counsel. Fletcher also asserted that, for the reasons Gitomer was disbarred, Gitomer also provided ineffective assistance of counsel during post–conviction proceedings. On September 3,

2014, the Circuit Court denied Fletcher's Motion to Reopen.[3]  On October 1, 2014, Fletcher filed an Application for Leave to Appeal with the Court of Special Appeals.  On January 7, 2015, Fletcher filed the pending Petition for Writ of Habeas Corpus *pro se*.  As of that date, the Court of Special Appeals had not ruled on the Application for Leave to Appeal the Motion to Reopen.

## DISCUSSION

Respondents assert that Fletcher's Petition is barred by the one-year statute of limitations that applies to habeas petitions for non-capital state court convictions.  *See* 28 U.S.C. § 2244(d)(1) (2012).  However, this one-year period is tolled while properly filed post–conviction proceedings are pending.  *See* 28 U.S.C. § 2244(d)(2).  Fletcher asserts that his Petition should be deemed timely because with the exception of a period of less than one year, the time between his state court conviction and the filing of his Petition consists of either time that was tolled by pending post–conviction proceedings or time that should be equitably tolled.

There are three time periods after Fletcher's conviction that affect whether his Petition is time-barred under § 2244(d):  (1) the period between September 26, 2007, when his direct appeal ended, and June 16, 2011, when the Court of Special Appeals issued the mandate on its decision denying his Application for Leave to Appeal his Petition for Post–Conviction Relief; (2) the period between June 16, 2011 and September 16, 2012, when Fletcher first received the opinion issued by the Court of Special Appeals; and (3) the period from that date to the filing of the January 7, 2015 Petition for a Writ of Habeas Corpus, during which Fletcher filed his Motion to Reopen.

---

[3]  Fletcher and Respondents assert that the Circuit Court denied Fletcher's Motion to Reopen on September 4, 2014.  However, the Circuit Court docket indicates that the order denying the motion was date-stamped September 3, 2014.

## I.     First Period:  Fletcher's Petition for Post–Conviction Relief

The Circuit Court sentenced Fletcher on January 29, 2007, and the Court of Special Appeals issued its mandate denying his direct appeal on June 28, 2007.  The mandate of the Court of Special Appeals constitutes the judgment of that court.  *See* Md. R. 8-606.  The direct review of this judgment therefore ended on September 26, 2007, when the time for seeking review in the Supreme Court expired.  *See* 28 U.S.C. § 2244(d)(1)(A); S. Ct. R. 13.1 (stating that "a petition for writ of certiorari to review a judgment in any case . . . entered by a state court of last resort . . . is timely when it is filed . . . within 90 days after entry of the judgment").

The limitations period did not begin to run then.  On July 30, 2007, nearly two months before the time period for seeking review in the Supreme Court expired, Fletcher filed a Petition for Post–Conviction Relief with the Circuit Court for Baltimore City, thus tolling the limitations period.  *See* 28 U.S.C. § 2244(d)(2).  The Circuit Court denied Fletcher's Petition on September 22, 2009.  The Court of Special Appeals denied Fletcher's Application for Leave to Appeal this decision on March 24, 2011, and the mandate issued on June 16, 2011.  Thus, the time period from July 30, 2007 to June 16, 2011 was also tolled.  *See* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."); *see also* Resp'ts' Limited Ans. Pet. Writ Habeas Corpus and Order Show Cause ("1st Ans.") at 4 (acknowledging that Fletcher's post–conviction state court proceedings "tolled the Section 2244(d) limitations period until June 16, 2011").

## II.    Second Period:  Equitable Tolling

The next time Fletcher claims to have filed an application for state post–conviction review under § 2244(d)(2) was August 16, 2013, when he filed his Motion to Reopen.  Because

the period between June 16, 2011 and August 16, 2013 exceeds one year, the limitations period would appear to have run. Fletcher, however, asserts that some portion of this time period should be subject to equitable tolling because his attorney stopped communicating with him, such that he was not notified of the ruling on his Application for Leave to Appeal until September 2012.

The Supreme Court has held that the limitations period of 28 U.S.C. § 2244 can be subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Such tolling however, is extraordinarily rare. "[A]ny resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party and gross injustice would result." *See Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). A petitioner is entitled to equitable tolling only upon a showing (1) "that he has been pursuing his rights diligently," and (2) "that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (citation omitted). An attorney's mistake in interpreting the limitations period under § 2244 does not, by itself, constitute an extraordinary circumstance. *See Harris*, 209 F.3d at 330. However, an attorney's repeated violation of "fundamental canons of professional responsibility" in a manner that seriously prejudices a client may constitute an extraordinary circumstance. *Holland*, 560 U.S. at 652–53. In *Holland*, the Supreme Court held that a death row inmate whose attorney failed to file his federal *habeas* petition on time could satisfy this requirement where the inmate had sent the attorney numerous letters seeking information on whether the state supreme court had decided his case and requesting that the attorney file the petition. *Id.* at 652–53. The Court found that the attorney's failure to file a timely petition or even to inform his client about the state court's decision that restarted the limitations period violated rules of

8

professional responsibility requiring attorneys to "communicate with their clients . . . to keep

their clients informed of key developments in their cases, and never to abandon a client" and thus

could justify equitable tolling. *Id.*; *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000)

(stating that equitable tolling may be available upon a showing that the defendant did not receive

notice of the denial of his appeal).

Here, Fletcher has set forth comparable extraordinary circumstances. Fletcher wrote six

letters to Gitomer between April 25, 2010 and March 22, 2011 asking for his case file and the

status of his Application for Leave to Appeal. Gitomer did not respond. When Fletcher

determined that Gitomer should no longer be his attorney, Gitomer ignored requests for the case

file. Even when the March 24, 2011 decision and June 16, 2011 mandate were issued, Gitomer

did not inform Fletcher. As a result of his attorney's failure to communicate, Fletcher wrote to

the Court of Special Appeals in December 2011 to ask for information on the status of his

Application. Although his Application had been denied months before, he received no response

from the court. Only when he sent another request for information to the court in August 2012

was he finally notified of the court's ruling.

Such abandonment of a client plainly violated the rules of professional responsibility. In

fact, the Court of Appeals of Maryland has issued an opinion disbarring Gitomer based on a

pattern of violations of the Maryland Rules of Professional Conduct comparable to those that

prejudiced Fletcher. *See Gitomer*, 49 A.3d at 333; Joint Pet. for Disbarment by Consent ¶ 3, Pet.

Ex. 23 ("Multiple complaints are currently pending before the Attorney Grievance Commission

of Maryland, in which it is alleged that the Respondent failed to represent his clients with

reasonable diligence and promptness, failed to communicate with them concerning the status of

their matter . . . ."). Such unprofessional conduct, particularly the lack of communication

regarding the Court of Special Appeals decision on Fletcher's Application for Leave to Appeal that restarted the clock on the one-year limitations period, constitutes extraordinary circumstances and stood in the way of Fletcher filing a timely petition. *See Holland*, 560 U.S. at 652–53.

In addition, Fletcher pursued his rights diligently. "The diligence required for equitable tolling purposes is 'reasonable diligence.'" *Holland*, 560 U.S. at 653. In *Holland*, the Court noted that the inmate's numerous letters to his attorney and to the court, and his immediate filing of a *pro se* petition upon learning that his attorney had missed the deadline, likely established "reasonable diligence." *Id.* As discussed above, Fletcher wrote six letters to Gitomer between April 25, 2010 and March 22, 2011 to determine the status of his Application for Leave to Appeal. *See Holland*, 560 U.S. at 653. He also wrote to the Court of Special Appeals twice to check whether that court had ruled on his Application and filed a complaint with the Attorney Grievance Commission of Maryland regarding Gitomer. *See id.* (finding diligence because the petitioner "also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have Collins—the central impediment to the pursuit of his legal remedy—removed from his case"). When he finally received information from the court that the decision had issued, he promptly filed a Motion to Reissue Opinion with that court on September 18, 2012, presumably to move the formal date of the decision forward for purposes of the limitations period. Fletcher sought to obtain new counsel, through the Innocence Project and the Maryland Office of the Public Defender, before filing a *pro se* Motion to Reopen in an effort to preserve his rights. These efforts demonstrate "reasonable diligence" sufficient to warrant equitable tolling under the circumstances.

Accordingly, because extraordinary circumstances stood in Fletcher's way and because Fletcher diligently pursued his rights, equitable tolling is appropriate. The record is not clear on when Fletcher was notified that the Court of Special Appeals had denied his Application for Leave to Appeal, or when he actually received the opinion. In response to his August 12, 2012 letter to the Court of Special Appeals, Fletcher received a printout of the docket, dated August 17, 2012. There is no record of when this printout was mailed out or received, but Fletcher asserts that he received it on September 4, 2012, the date that he wrote back requesting a copy of the opinion. He then wrote to the Maryland Attorney General on September 6, 2012 to request a copy of the opinion, which was mailed to him with a letter dated September 13, 2012. There is no record that the Court of Special Appeals mailed him the opinion until October 2, 2012, in response to Fletcher's September 18, 2012 Motion to Reissue Opinion.

Notably, had his attorney not abandoned him, Fletcher would have received notice of the decision and opinion at the same time, when the court sent the opinion to his attorney. Because the printout dated August 17, 2012 was not accompanied by the opinion or mandate, which would need to be reviewed prior to taking further action, the Court equitably tolls the time period from June 16, 2011, the date the mandate issued, until September 16, 2012, three days after the opinion was mailed out to Fletcher for the first time. *Cf.* Fed. R. Civ. P. 6(d) (adding three days to court deadlines to account for mailing).

## III.    Third Period: Motion to Reopen

Fletcher mailed his Motion to Reopen to the Circuit Court for Baltimore City on August 16, 2013. Although Respondents claim that Fletcher filed his Motion to Reopen on August 26, 2013, in the case of a *pro se* prisoner, the operative date for filing is the date the prisoner delivered the document to prison authorities to be forwarded to the court. *See* R. Governing

Section 2254 Cases 3(d) (stating that "[a] paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing"); *Houston v. Lack*, 487 U.S. 266, 271 (1988) (holding that a prisoner's notice of appeal was filed when he delivered it to prison authorities because a *pro se* prisoner is "unable to leave the prison" and the prisoner's "control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access—the prison authorities"). Because Fletcher's Certificate of Service states that he mailed the Motion to Reopen on August 16, 2013, Fletcher's Motion to Reopen is deemed to have been filed on that date. Accordingly, the period of time prior to the filing consumed 11 months, from September 16, 2012 to August 16, 2013, and thus did not exceed the one-year limitations period.[4]

Fletcher asserts that the Motion to Reopen tolled the limitations period from that date until the filing of his Petition on January 7, 2015. "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). The Supreme Court has broadly defined an application for "collateral review" to include a motion seeking "judicial review that occurs in proceedings outside of the direct review process." *Wall v. Kholi*, 562 U.S. 545, 560 (2011) (holding that a motion to reduce the sentenced constituted an application for collateral review that tolled the limitations period for filing a *habeas* petition). Such a broad reading is warranted because "[t]olling the limitations for all 'collateral review' motions provides both litigants and States

---

[4]   The Court notes that even if the period of equitable tolling were deemed to have ended on August 17, 2012, the date of the printout of the docket, or September 4, 2012, the date by which Fletcher acknowledged having received it without the opinion, the elapsed time on the § 2244(d)(2) limitations period would not exceed one year.

with an opportunity to resolve objections at the state level, potentially obviating the need for a litigant to resort to federal court." *Id.* at 558.

A motion to reopen such as the one filed by Fletcher is contemplated by Maryland's Uniform Post Conviction Procedure Act, which states: "The court may reopen a postconviction proceeding that was previously concluded if the court determines that the action is in the interests of justice." Md. Code Ann., Crim. Proc. § 7-104 (West 2011). As Respondents have acknowledged, under *Wall*, a motion to reopen post–conviction proceedings that was properly filed would toll the limitations period under § 2244(d)(2). *See Wall*, 562 U.S. at 560. An application for post–conviction relief is "'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Section 7-104 does not dictate any time limitation for filing a motion to reopen, and Fletcher successfully mailed his Motion to the Circuit Court, so his motion is "properly filed." *See id.* Notably, Fletcher's Motion to Reopen sought to exhaust state court remedies on an issue not previously presented, specifically, ineffective assistance of counsel during the post–conviction proceedings. The Court therefore finds that the limitations period was tolled during the pendency of the Motion to Reopen.

Although the Circuit Court denied Fletcher's Motion to Reopen, as of the filing of this Petition, Fletcher's Application for Leave to Appeal that decision remained pending before the Court of Special Appeals. Accordingly, the period between August 16, 2013, when Fletcher filed his Motion to Reopen, and January 7, 2015, when Fletcher filed his Petition for a Writ of Habeas Corpus, is tolled under § 2244(d)(2). Accordingly, when the period of equitable tolling is applied, the one-year limitations period under § 2244(d) had not expired when Fletcher filed his Petition. The Petition is not time-barred.

**CONCLUSION**

For the foregoing reasons, Fletcher's Petition is not time-barred under § 2244(d). Respondents must therefore file a supplemental Answer to address the substantive allegations in Fletcher's Petition. *See* R. Governing Section 2254 Cases 5(b). A separate Order shall issue.


Date:  August 2, 2016

THEODORE D. CHUANG
United States District Judge

14