# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

KEVIN DWAYNE FLETCHER,
*Inmate Identification No. 341-134*,

      Petitioner,

      v.

JOHN WOLFE, JR.,[1]
*Warden of Jessup Correctional Institution*, and
THE ATTORNEY GENERAL OF THE
STATE OF MARYLAND,

      Respondents.

Civil Action No. TDC-15-0051

## MEMORANDUM OPINION

Petitioner Kevin Dwayne Fletcher, who is currently confined at the Jessup Correctional

Institution in Jessup, Maryland, has filed a Petition for a Writ of Habeas Corpus pursuant to 28

U.S.C. § 2254. For the reasons set forth below, the Petition is DENIED.

## BACKGROUND[2]

On July 12, 2004, Fletcher was charged in Maryland state court with first-degree murder

and related charges arising from a June 1, 2004 murder in Baltimore, Maryland. On June 23,

2004, Fletcher confessed to the murder in a statement to police officers. He stated that he and a

---

[1]     Since the filing of the Petition, Fletcher has been transferred from the North Branch Correctional Institution to the Jessup Correctional Institution ("JCI"). Therefore, the Clerk is directed to substitute the current Warden of JCI, John Wolfe, Jr. as a Defendant in this case. *See* Fed. R. Civ. P. 25(d).

[2]     The procedural history of this case is set forth in the Court's August 2, 2016 Memorandum Opinion, *Fletcher v. Miller*, No. TDC-15-0051, 2016 WL 4132210, at *1-3 (D. Md. Aug. 2, 2016).

co-defendant "were so close, we were point blank firing upon" the victim. Pet. Ex. 30 at 19, ECF No. 1-31. When asked whether anyone had threatened him or promised him anything to make a statement, Fletcher responded, "A reduction in time." Pet. Ex. 32 at 2, ECF No. 1-33. He acknowledged that he had been treated "pretty good" by the police officers. Pet. Ex. 32 at 2. Fletcher now asserts that the confession was coerced by promises of leniency and by a physical assault against him by the officers.

On January 13, 2005, Fletcher signed a plea agreement in which he agreed to plead guilty to first-degree murder and the use of a handgun during the commission of a crime of violence. The plea agreement provided that, in exchange for Fletcher's testimony against his co-defendant, the State would recommend a sentence of life imprisonment with all but 25 years suspended for the murder, and 20 years of imprisonment for the handgun charge, both sentences to run concurrently. Fletcher pleaded guilty to both crimes on February 11, 2005 in the Circuit Court for Baltimore City, Maryland ("the circuit court").

Approximately one week after Fletcher's guilty plea, the State disclosed additional materials to Fletcher's counsel. On February 16, 2005, the State turned over a plea agreement of Kerwayne Stanton, a witness to the murder. On or about February 18, 2005, the State disclosed a brief written statement signed by Stanton relating to a "photographic line-up/digital photo" session, and the transcript of a recorded statement to detectives of the Baltimore City Police Department, both of which occurred on June 3, 2004 (collectively, "the Stanton Statement"). Pet. Ex. 35, ECF No. 1-36. In the written statement, Stanton stated that Fletcher was with his co-defendant the night of the murder, but [Fletcher] was "not the gunman because my angle of view was block[ed] of[f] by the car, but after all of that when the sound of guns was stop[ped]," Fletcher and his co-defendant "ran up Filbert [Street]." *Id.* at 1. In the recorded statement,

Stanton stated that he saw Fletcher and his co-defendant exit a bar with the victim. Shortly thereafter, Stanton heard multiple rounds of gunshots that he described as being too fast to be from a single weapon. From his vantage point, Stanton saw only one individual, Fletcher's co-defendant, firing at the victim, but his view of Fletcher was blocked by a car, and it was possible that Fletcher also had a gun.

On October 5, 2006, over 18 months after he pleaded guilty, Fletcher filed a motion to withdraw his guilty plea. At a November 1, 2006 hearing on the motion, Fletcher's counsel stated that Fletcher "wants to withdraw his plea" because "he believes that he can win at trial and that he can get his confession suppressed" on the grounds that he was misled by the police into believing he would get a reduced sentence if he cooperated. Pet. Ex. 40 at 6, 9, ECF No. 1-41. The circuit court denied the motion on the grounds that the plea had been entered knowingly, intelligently, and voluntarily. Fletcher then declined to testify against his co-defendant to the satisfaction of the State, in violation of the plea agreement. As a result, on January 29, 2007, Fletcher was sentenced to life imprisonment for the charge of first-degree murder, and 20 years for the handgun crime, with the sentences to run consecutively.

## DISCUSSION

Fletcher raises two grounds for relief in this Court. First, he asserts that his 2005 guilty plea was not knowing and voluntary because the elements of each crime were not adequately explained to him at the time of the plea. Second, he claims that he received ineffective assistance of counsel by his trial counsel based on the failure (1) to "investigate the relevant facts available and . . . the facts of any defense," Pet. at 20, ECF No. 1; (2) to argue a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), as grounds to withdraw Fletcher's guilty plea when the

Stanton Statement was disclosed a week after Fletcher's plea; and (3) to provide an adequate explanation of the available grounds to challenge his confession.

## I.  Legal Standard

A petition for a writ of *habeas corpus* may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a) (2012).  The federal *habeas* statute sets forth a highly deferential standard for evaluating state court rulings, under which state court decisions are to "be given the benefit of the doubt."  *Bell v. Cone*, 543 U.S. 447, 455 (2005); *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997).  A federal court may not grant a writ of *habeas corpus* unless the state court's adjudication on the merits (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).  "[A] a federal *habeas* court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly*.*"  *Renico v. Lett,* 599 U.S 766, 773 (2010).  The state court's application of federal law must be "objectively unreasonable."  *Id.* Furthermore, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal *habeas* court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  The fact that "reasonable minds reviewing the record might disagree about the finding in question" is not enough to deem a state court's factual determination unreasonable.  *Id.*

## II.     Guilty Plea

Fletcher claims that his guilty plea was not knowing and voluntary because the elements of the crimes of conviction were not explained to him on the record, and he never discussed the crimes with his attorney.  Fletcher does not state that he would have refused to plead guilty had he been aware of any particular element of either crime, only that the record does not positively show that he understood the specific elements of each crime.  According to Fletcher, his convictions must be vacated "as they are the product of an invalid guilty plea."  Pet. at 18.

Respondents first argue that Fletcher's claim regarding his guilty plea is based on Maryland law and is therefore not a cognizable claim in a *habeas* petition.  "Such an inquiry . . . is no part of a federal court's *habeas* review of a state conviction," because "federal *habeas corpus* relief does not lie for errors of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).  "[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions."  *Id.* at 67-68.  Indeed, Fletcher primarily relies on *State v. Daughtry*, 18 A.3d 60 (Md. 2011), as the basis for his claim.  However, Fletcher also cites cases from the United States Supreme Court, such as *Boykin v. Alabama*, 395 U.S. 238 (1969), and *Bradshaw v. Stumpf*, 545 U.S. 175 (2005), which suggests that his claim is not entirely based on state law grounds.  In denying Fletcher's Petition for Post-Conviction Relief on this issue, the state post-conviction court did not specify that its decision was based solely on state law.  The Court therefore concludes that, reading the Petition liberally, Fletcher sought to raise a federal claim in challenging the validity of his guilty plea.

Respondents next assert that Fletcher's claim fails on the merits.  "A guilty plea operates as a waiver of important rights and is valid only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences."  *Bradshaw,*

545 U.S. at 183 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). A plea is invalid if a defendant pleads guilty without being informed of the elements of the crime at some point. *Bradshaw*, 545 U.S. at 183 (citing *Henderson v. Morgan*, 426 U.S. 637, 646 (1976)). However, a judge is not required directly to "explain the elements of each charge to the defendant on the record," so long as "the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." *Bradshaw*, 545 U.S. at 183.

In the absence of a specific statement on the record to that effect, courts have applied a presumption that defense attorneys usually explain the nature of a charge to their clients. *See Henderson v. Morgan*, 426 U.S. 637, 647 (1976) ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice what he is being asked to admit."); *Harrison v. Warden*, 890 F.2d 676, 678 (4th Cir. 1989) (applying the *Henderson* presumption where the defendant stated that he had "entirely" discussed the matter with his counsel, and defense counsel stated at the post-conviction hearing that he had discussed the nature of the charged offense with the defendant). *But see Hicks v. Franklin*, 546 F.3d 1279, 1284 (10th Cir. 2008) (refusing to apply the *Henderson* presumption without a factual basis in the record to support it).

> In denying the state post-conviction petition, the circuit court determined:
>
> At the Hearing, the State's cross examination of Petitioner established that the charges were read to him at his arraignment. Moreover, Petitioner admitted, under oath, that his attorney discussed the charges with him and met with him on a number of occasions to discuss his case. Therefore, this allegation is without merit because, by his own words, Petitioner refutes the allegation. Furthermore, the record states that Petitioner was qualified by the Court and freely and voluntarily entered the guilty plea.

Pet. Ex. 41 at 6, ECF No. 1-42.

Where, as here, the state post-conviction court decided the issue of Fletcher's guilty plea on the merits, this Court may not grant the Petition on this basis unless it finds that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1). Upon review of the record, this Court concludes that the state post-conviction court did not render its decision based on an unreasonable application of the Supreme Court's guidance in *Henderson* and *Bradshaw* or an unreasonable determination of the facts.

The record of the state post-conviction hearing shows that Fletcher had been notified of the charges against him and had discussed that charge with his trial counsel. During his testimony at that hearing, Fletcher testified as follows:

Q    "The jurors of the State of Maryland for the body of the City of Baltimore do on their own to present that the aforesaid Defendant, Mr. Kevin Fletcher, late of said City, heretofore on or about the date of offense set for above, June 1st, 2004, at the location set forth above, 1600 block of Hazel Street in the City of Baltimore, State of Maryland, did feloniously, willfully, and with deliberately premeditated malice killed and murdered Lydell Harris against the peace, government, and dignity of this State." Does that sound familiar to you, Mr. Fletcher?

A    Yes, ma'am.

Q    It does, because they read that to you at your arraignment, isn't that right?

A    At my arraignment?

Q    Yes.

A    Yes, ma'am.

Q    Well, I imagine you talked about that at other times with [your attorney], is that right?

A    No, ma'am.

Q       You never discussed your charge?

A       I discussed my charge, yeah.

Pet. Ex. 25 at 31-32, ECF No. 1-26.  The state post-conviction court also received as evidence a video of the arraignment in which Fletcher's defense counsel affirmed that he had reviewed with Fletcher the mandatory penalties at issue on these charges.  Fletcher acknowledged at the state post-conviction hearing that he had been informed of the possible penalties.

Fletcher argues that the state post-conviction court's reliance on this evidence contradicts the clearly established law of *Bradshaw* and *Boykin*, because the nature and elements of the charges must be explained during the guilty plea hearing itself.  Although *Bradshaw* upheld a guilty plea in which defense attorneys had stated on the record that they had explained the elements of the charged offense to the defendant, it did not hold that only a statement during the plea hearing would suffice.  *Bradshaw*, 545 U.S. at 183.  Likewise, *Boykin*, which generally held that a guilty plea must be based on "an affirmative showing that it was intelligent and voluntary," imposes no such requirement.  *Boykin*, 395 U.S. at 242.  Rather, in *Henderson*, the Supreme Court allowed for a presumption that defense counsel explains the nature of the offense to the defendant, without an express representation on the record at the plea hearing.  *Henderson*, 426 U.S. at 647.  Then, in *Harrison*, the United States Court of Appeals for the Fourth Circuit held that under *Henderson*, the requirement that the elements of the offense were understood could be based in part on post-conviction hearing testimony that defense counsel had discussed the nature of the offense with the defendant, "[q]uite a few times." *Harrison*, 890 F.2d at 678.  Furthermore, in *Desrosier v. Bissonnette*, 502 F.3d 38, 42 (1st Cir. 2007), the court relied in part on post-conviction hearing testimony that defense counsel had "assessed" and "discussed"

everything with the defendant, including the evidence, to permit reliance on the presumption that defense counsel had discussed the elements with the defendant, even in the absence of any explicit testimony to that effect.  *Id.* at 42 ("Given that the Supreme Court has never required defense counsel to say outright that he or she has discussed the elements of the crime with the defendant in order for a constitutionally valid plea to result . . . the Appeals Court did not unreasonably apply federal law.").

Notably, in cases in which a guilty plea was invalidated based on the lack of an explanation of an element of an offense, the offense at issue had never been the subject of an arraignment.  In *Henderson*, the defendant was charged with first-degree murder but instead pleaded guilty to second-degree murder, a crime that required different elements from the originally charged crime.  *See Henderson*, 426 U.S. at 645-56 & n.14.  Noting that "[t]he charge of second-degree murder was never formally made," the Court stated that the case was "unique" because "the trial judge found as a fact that the element of intent was not charged."  *Id.* at 645-47.  Likewise, in *Hicks*, where the defendant had been formally charged with first-degree murder but pleaded guilty to second-degree murder, the court invalidated the guilty plea when the trial court improperly explained the new charge to the defendant, but signaled that notice of the nature of the charge could have been accomplished if there had been a formal indictment or information on that charge.  *Hicks*, 546 F.3d at 1285-86 & n.5 ("[B]ecause the formal charging document did not contain the murder in the second degree charge, Mr. Hicks could not have received notice from that document.").

Fletcher's reliance on *State v. Daughtry*, 18 A.3d 60 (Md. 2011), is misplaced.  In *Daughtry*, the Court of Appeals of Maryland, in interpreting Maryland Rule 4-242(c), held that  a showing that a defendant was represented by counsel and discussed a plea deal with counsel was

insufficient to show that a guilty plea was entered knowingly and voluntarily. *Id.* at 84. However, a state court opinion setting forth state law, such as *Daughtry*, cannot provide a basis to grant the Petition, because federal *habeas* relief is only available for violations of federal law. *See Estelle*, 502 U.S. at 68.

Here, Fletcher was charged with and pleaded guilty to the same crimes, first-degree murder and use of a firearm during the commission of a crime of violence, that were reviewed with him at the arraignment, and he admitted at the state post-conviction that he discussed his charges with his defense counsel. These factual determinations were not unreasonable. Based on the federal precedent described above, which allows for a presumption that defense counsel discussed the elements with the defendant and consideration of post-conviction hearing testimony and the relevant charging documents, it was not an unreasonable application of federal law for the state post-conviction court to conclude that Fletcher had been adequately informed of the nature of the charges against him. The Court will deny the Petition on this issue.

## III.  Ineffective Assistance of Counsel

Fletcher also seeks *habeas* relief on the grounds that he received ineffective assistance from his trial counsel. Specifically, Fletcher alleges that his counsel (1) failed to investigate the Stanton Statement, which arguably showed that Fletcher was not the shooter in the murder, and failed to investigate Fletcher's claims that his confession was coerced; (2) failed to argue a *Brady* violation as grounds to withdraw his guilty plea; and (3) provided an inadequate explanation of the available grounds to challenge his confession. Respondents assert that Fletcher's claims are procedurally defaulted and otherwise do not justify *habeas* relief on the merits.

### A.     Procedural Default

As an initial matter, the Court rejects Fletcher's argument that Respondents have waived procedural default as a defense.  Although Respondents did not assert procedural default as a defense in their Limited Answer to the Petition, that Answer was focused only on the issue of whether the Petition was time-barred, and it explicitly requested leave to assert additional defenses on the merits if the Court found that the Petition was not time-barred.  After the Court ordered Respondents to address the merits of the Petition, Respondents asserted a procedural default defense.  There was no waiver.

A petitioner seeking *habeas* relief in federal court must first properly exhaust the remedies available in state court.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Here, there is no dispute that Fletcher's claims have been exhausted.  Where a petitioner has exhausted available state remedies, a court must determine whether the procedural default doctrine applies to bar federal review of one or more claims.  A claim has been procedurally defaulted where a petitioner has failed to present it to the highest state court with jurisdiction to hear it, whether by failing to raise the claim on direct appeal or in post-conviction proceedings, or by failing to timely note an appeal.  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to timely note an appeal); *Murray v. Carrier*, 477 U.S. 478, 490-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46-47 (1972) (failure to raise claim in state petition for post-conviction relief); *Bradley v. Davis*, 551 F. Supp. 479, 482 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). In addition, a procedural default has occurred when a *habeas* petitioner did not present the claim to a state court, and the state court "to which the petitioner would be required to present his claims . . . would now find the claims procedurally barred."  *Id.* at 619 (quoting *Coleman*, 501

U.S. at 735 n.1). A claim is also procedurally defaulted if a "state court clearly and expressly bases its dismissal of a *habeas* petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

Fletcher acknowledges that the ineffective assistance of counsel claims he has presented in his Petition were not asserted in either his state court Petition for Post-Conviction Relief, or in his amended motion in state court. Although he claims to have requested to add them on the day of the state post-conviction hearing, the specific claims were never identified to the court. Rather, after the court agreed to accept the amended motion and consider additional claims asserted in that motion, the court generally rejected a request to add still more claims.

> [STATE'S ATTORNEY]: Just for the record, Mr. Gitomer [Fletcher's counsel] advised me his client wants to add new allegations today. I would also be objecting to those.
>
> THE COURT: Denied. What was filed as of, I believe, the 13th of this month, after two years' of wrangling, is what we'll decide this case on.

Pet. Ex. 25 at 7. Thus, Fletcher first asserted these specific claims in a Motion to Reopen Closed Post Conviction Proceeding ("Motion to Reopen"), filed with the state post-conviction court on August 26, 2013. The state post-conviction court dismissed that motion on September 4, 2014 in a one-sentence order stating, "IT IS HEREBY ORDERED that the Motion to Reopen Closed Post Conviction Proceeding and Request for Hearing is DENIED." Pet. Ex. 22, ECF No. 1-23.

"Federal *habeas* courts may not consider a § 2254 claim if a state court disposed of the claim on adequate and independent state grounds unless the *habeas* applicant can demonstrate cause and prejudice or a fundamental miscarriage of justice." *Wilson v. Moore*, 178 F.3d 266, 272 (4th Cir. 1999). A state procedural bar to raising a new claim is an independent and adequate state ground that precludes federal *habeas* review. *Breard v. Pruett*, 134 F.3d 615, 619

(4th Cir. 1998). In determining whether an ambiguous state court decision, such as a one-sentence denial, rests on state procedural grounds or was made on the merits, courts consider several factors. *Wilson*, 178 F.3d at 273-74. A federal *habeas* court should consider "the text of the state court's order for clues," such as references to federal law, to discern the basis of the order. *Id.* at 273. Federal courts should also consider "the circumstances surrounding the entry of the state order," including whether the claims were subject to summary denial under state law and whether the state court refused to conduct an evidentiary hearing. *Id.* at 274.

Applying these factors, the Court concludes that the state post-conviction court did not consider the merits of Fletcher's claims in his Motion to Reopen, such that they are procedurally defaulted. The text of the order denying the Motion to Reopen does not mention federal law or address the merits of Fletcher's motion. The state post-conviction court did not afford an evidentiary hearing. Most importantly, where Fletcher had not raised these particular claims in his Petition for Post-Conviction Relief, there was a state law procedural basis for deeming the claims waived. Under the Maryland Uniform Post-Conviction Procedure Act, absent special circumstances, "an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation" before or at trial, on direct appeal, in an application for leave to appeal, in a *habeas corpus* proceeding began by the petitioner, in a prior post-conviction petition, or in any other proceeding that the petitioner began. Md. Code. Ann., Crim. Proc. § 7-106(b)(1)(i) (2011). When the petitioner could have made an allegation of error at such a proceeding but did not, "there is a rebuttable presumption that the petitioner intelligently and knowingly failed to make the allegation." *Id.* at § 7-106(b)(2). Here, Fletcher's claims of ineffective assistance of counsel arise out of his alleged coerced confession and the disclosure of the Stanton Statement one week after Fletcher's guilty plea, the facts of which were

known to Fletcher well in advance of his Petition for Post-Conviction Relief. Yet he did not timely assert these claims in either his July 30, 2007 Petition for Post-Conviction Relief filed *pro se*, or his July 13, 2009 Amended Petition for Post-Conviction Relief filed through counsel, in which other ineffective assistance of trial counsel claims were asserted. Under the totality of the circumstances, the Court finds that the state post-conviction court's summary denial of the Motion to Reopen was on procedural grounds, specifically a waiver of error under Section 7-106(b)(1), and thus did not address the merits of Fletcher's claims. *See* Md. Code. Ann., Crim. Proc. § 7-106(b)(1). *Cf. Newton v. State*, 168 A.3d 1, 7 n.5 (Md. 2017) (finding a waiver, under Section 7-106(b)(1), of a claim first raised in a post-conviction petition when the defendant failed to allege error at trial).

When a state prisoner's *habeas* claim has been procedurally defaulted, a federal court may not address the merits of the claim unless the petitioner can show both "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense" that "impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S 478, 488 (1986). To demonstrate prejudice, the petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see Murray*, 477 U.S. at 494. In addition, a petitioner may obtain review of procedurally defaulted claims if the case "falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)) (alteration in original); *Coleman*, 501 U.S. at 750 (holding that procedural

default may be excused if the failure to consider the claims will result in a "fundamental miscarriage of justice").  Such cases are generally limited to those for which the petitioner can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray*, 477 U.S. at 496.  To be credible, "a claim of actual innocence must be based on reliable evidence not presented at trial."  *Calderon v. Thompson*, 523 U.S. 538, 559 (1998).

In his reply brief, Fletcher argues that the failure to raise the asserted ineffective assistance of counsel claims in his Petition for Post-Conviction Relief was caused by the ineffectiveness of his post-conviction counsel.  Ineffective assistance of state post-conviction counsel can establish cause to excuse a procedural default on federal *habeas* review.  *See Martinez v. Ryan*, 566 U.S. 1, 17-18 (2012).  However, "[w]hen faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, *i.e.*, it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards."  *Id.* at 15-16.  Here, the Court finds that Fletcher's ineffective assistance of trial counsel claims are not substantial such that even assuming, *arguendo*, that Fletcher's post-conviction counsel was ineffective to the point of establishing cause for a procedural default, Fletcher has not shown the requisite prejudice to overcome that default.

A petitioner alleging ineffective assistance of counsel must meet the two-part standard set by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, the defendant must show that counsel's performance was deficient in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  Second, the defendant must show that the deficient performance

prejudiced the defense in that counsel's errors "were so serious as to deprive the defendant of a fair trial" whose result was reliable. *Id.* Fletcher's ineffective assistance of trial counsel claims center on two episodes: the post-guilty plea disclosure of the Stanton Statement and Fletcher's confession.

### B.    The Stanton Statement

First, Fletcher argues that his attorney failed to conduct sufficient investigation to uncover the Stanton Statement, which he claims was exculpatory. Fletcher contends that if he had known of the Stanton Statement at the time of his guilty plea, he would not have entered the plea. Furthermore, Fletcher asserts that upon receiving the Stanton Statement after Fletcher had pleaded guilty, his attorney was ineffective because he failed to assert a *Brady* violation for failure to disclose exculpatory evidence and failed to assert the late disclosure as a basis for Fletcher's motion to withdraw his guilty plea. In order to prevail on a *Brady* claim, a defendant must show that the evidence at issue is favorable to the defense and is material, in that "its suppression undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678 (1985).

These assertions fail to establish a substantial claim of ineffective assistance of counsel because, contrary to Fletcher's claim that the Stanton Statement "clears Petitioner of any crimes," Pet. at 23, a review of the statement reveals that it is highly inculpatory. Although the written statement by Stanton states that that "[Fletcher] was not the gunman because my angle of view was block[ed] of[f] by the car," Pet. Ex. 35 at 1, the more detailed recorded statement clarifies this statement and implicates Fletcher in the murder. In the recorded statement, Stanton described Fletcher's clothing on the night of the murder, stated that he saw Fletcher, his co-defendant, and the victim exit a bar, and recounted that he saw the victim approach, then run

away from, a car. Pet. Ex. 28 at 4, 9-12, ECF No. 1-29. Stanton further stated that he saw Fletcher's co-defendant firing at the victim, but could not see whether Fletcher also had a gun because his view was blocked. But Stanton specifically stated that he heard "multiple" gunshots, approximately 15 to 17 shots, that were from "two different types of guns" and were too fast to be coming from a single weapon. Pet. Ex. 28 at 10-11. Stanton stated that the shots were coming from the street, not the car, and that the shots continued even after the car left the scene. He also asserted that at the time of the shooting, there was no one on the street other than Fletcher and his co-defendant, and that after the firing stopped, Fletcher and the co-defendant fled the scene. Thus, the Stanton Statement was not exculpatory. It placed Fletcher at the scene and clearly implicated him in the crime because there were two shooters, Fletcher was with one of the shooters, and he was the only other person on the street at the time. As a result, there was no reasonable likelihood that the circuit court would have deemed the later disclosure of this inculpatory statement to be a *Brady* violation, or that it would have deemed the statement to provide a basis for granting a motion to withdraw the guilty plea. *See United States v. Fisher*, 711 F.3d 460, 465 (4th Cir. 2013) (requiring "impermissible government misconduct" in order to set aside a guilty plea as involuntary). Accordingly, the fact that Fletcher's attorney did not uncover the Stanton Statement sooner, or assert it as a basis for withdrawing Fletcher's guilty plea, did not establish prejudice in the form of "actual and substantial disadvantage" sufficient to excuse the procedural default. *See Frady*, 456 U.S. at 170. For the same reason, the lack of prejudice precludes a finding of ineffective assistance of counsel relating to the Stanton Statement. *See Strickland*, 466 U.S. at 687.

Fletcher's theory that his attorney should have uncovered the Stanton Statement and used it to challenge the arrest warrant is also unavailing. The Stanton Statement's description of

Fletcher's conduct would have been sufficient to establish probable cause to arrest Fletcher. A review of the Application for Statement of Charges reveals no claim that there was an eyewitness who specifically saw Fletcher with a gun, only a claim that the investigation revealed that Fletcher and his co-defendant had each shot the victim, assertions supported by the Stanton Statement. The claim that Fletcher was seen running away "still carrying a handgun" may have been inaccurate, Pet. Ex. 44, ECF No. 1-45, but that additional fact would have been unnecessary to establish probable cause, such that a motion for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), would have failed. *See, e.g., United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011) ("[I]f the allegedly false statements are not necessary for the probable cause finding, the accused is not entitled to a *Franks* hearing."). Thus, Fletcher has not shown how the filing of such a motion would have invalidated the arrest warrant and thus tainted his confession.

Fletcher's reliance on *United States v. Fisher*, 711 F.3d 460 (4th Cir. 2013), is misplaced. In *Fisher*, a police officer pleaded guilty to falsely attributing information to a confidential informant over a number of years, including falsifying information used to secure a search warrant for the defendant's home. *Id.* at 462-63. The Fourth Circuit held that Fisher's guilty plea was invalid because it was made in reliance on "an affirmative government misrepresentation that strikes at the integrity of the prosecution as a whole," specifically, the officer's admitted false claim that a confidential informant had told him that the defendant had a gun in, and sold drugs from, his residence. *Id.* at 466. Here, the police plainly had probable cause to arrest Fletcher based on the Stanton Statement, such that any inaccuracies in the Application for Statement of Charges did not constitute impermissible government misconduct of the type present in *Fisher*. Thus, Fletcher has not established that his trial counsel's failure to uncover the Stanton Statement, or to seek to withdraw his guilty plea based on the late disclosure

of the statement, constituted deficient performance that resulted in actual prejudice that would excuse procedural default or support a finding of ineffective assistance of counsel.

### C. The Confession

Second, Fletcher argues that his trial counsel was ineffective because he failed to investigate the circumstances surrounding his confession, apprise Fletcher of potential grounds to have his confession suppressed, and pursue a motion to suppress the confession. In order for a reviewing court to conclude that defense counsel provided deficient performance by failing to pursue a motion to suppress, it must conclude that "no competent attorney would think a motion to suppress would have failed." *Premo v. Moore*, 562 U.S. 115, 124 (2011). A finding of ineffective assistance of counsel for failing to file a motion to suppress a confession is appropriate when there was "nothing" in the record "that would excuse the defense team's failure to move to suppress" the confession. *Tice v. Johnson*, 647 F.3d 87, 106 (4th Cir. 2011).

According to Fletcher, his confession was involuntary because he was induced to confess by a promise of a reduced sentence, and because he was assaulted by the detectives conducting the interrogation. Fletcher asserts that his counsel rendered ineffective assistance because he failed to uncover certain evidence that would have rendered an involuntary confession claim meritorious. In support of the first basis, a promise of a reduced sentence, Fletcher submitted the first two pages of the transcript of his recorded confession, but did not provide the remainder of the transcript. When asked during his interrogation whether he had been threatened or promised anything to give a statement, Fletcher responded, "A reduction in time." Pet. Ex. 32 at 2. The detective then asked him, "When you say 'A reduction in time' what do you exactly mean?" *Id.* He then began to discuss this issue by asking, "did we basically explain to you how the whole procedure works?" *Id.* Although Fletcher agreed that he had received such an explanation, the

remainder of the discussion was not submitted to the Court. With his Petition, Fletcher has submitted an affidavit in which he asserts that he "was promised a reduction in time to make a statement." Pet. Ex. 45, ECF No. 1-46.

In the same affidavit, Fletcher asserts that he "was assaulted by a Detective" at the time of his arrest and interrogation. *Id.* He has submitted documents that he contends show that he had no injuries at the time of his arrest and prior to his interrogation, but had injuries to his hands afterwards. However, in the portion of the transcript of his recorded interview that was submitted, Fletcher was asked about his treatment in police custody yet failed to mention any mistreatment:

> [Detective] Ciraolo: Um how have you been treated since you've been in our office?
>
> Fletcher: Pretty good, pretty good.
>
> Ciraolo: Okay, has anybody threatened you or promised you anything to give this statement, coerced you?
>
> Fletcher: A reduction in time.

Pet. Ex. 32 at 2.

The submitted information is insufficient to establish that defense counsel's failure properly to investigate the circumstances of the confession, or his decision not to seek suppression of the confession, constituted ineffective assistance of counsel that resulted in actual prejudice to the defendant. First, the evidence offered by Fletcher is far from conclusive. Although he stated during the recorded interview that he believed that he had been promised a reduction in sentence, the detective did not confirm that understanding. Rather, the detective appears to have begun to clarify what the police had said to him about the benefits of cooperation, suggesting that he had not made such a specific promise of a reduced sentence.

Where Fletcher has not provided the remainder of the transcript of his confession, there is no specific evidence showing that he was, in fact, induced by an improper promise of leniency.

Moreover, discussions about potential leniency do not necessarily render a confession involuntary. A confession is deemed involuntary if, under the "totality of the circumstances," the defendant's will has been "overborne or his capacity for self-determination critically impaired." *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987); *see also* 2 Wayne R. LaFave *et al.*, *Criminal Procedure* § 6.2(c) (4th ed. 2015). Promises of leniency are one factor in this analysis. *See Pelton*, 835 F.2d at 1073. Although a promise of leniency may well be coercive if it is "broken or illusory," not all promises of leniency or favorable treatment are coercive. *See Pelton*, 835 F.3d at 1073 (considering the lack of "broken promises" in concluding that the defendant was not coerced by alleged promises of leniency including an alleged promise to forgo an overt investigation involving questioning of the defendant's family and friends); *United States v. Shears*, 762 F.2d 397, 402 (4th Cir. 1985) (noting that "there are certain promises whose attraction renders a resulting confession involuntary *if the promises are not kept*" (emphasis added)); *United States v. Johnson*, 351 F.3d 254, 262 (6th Cir. 2003) (holding that a promise to not prosecute the defendant's sister for drugs found in her apartment was not coercive because the police did not, in fact, prosecute the sister after defendant confessed); *United States v. Robinson*, 698 F.2d 448, 455 (D.C. Cir. 1993) (holding that a promise not to arrest and charge the defendant the day of the interrogation, even when broken, did not render a confession involuntary).

Here, Fletcher, in fact, received a plea agreement that provided for a substantial reduction in his period of imprisonment—a total of 25 years to serve, with the remainder suspended—as compared to what he could have received, and did receive after he breached the plea

agreement—life imprisonment with no period suspended on the murder charge, and a consecutive 20 year sentence on the firearm charge. Under these circumstances, and with the lack of clear evidence that any specific promise of a reduced sentence was actually made, the Court cannot conclude that Fletcher's trial counsel was ineffective for failing to pursue this issue further, or to move to suppress the confession on this basis.

Likewise, the purportedly new evidence offered regarding alleged physical coercion is not conclusive. Although Fletcher has offered some photographs with poor resolution as alleged documentation of injuries incurred during his interrogation, the transcript of the interrogation reveals that he acknowledged, during the interview, that he had been treated "pretty good" by the police, and when asked whether he had been threatened to make a statement, he made no mention of any mistreatment. Pet. Ex. 32 at 2. Moreover, at the guilty plea hearing, Fletcher was expressly asked whether he understood that he was agreeing to give up his right to challenge his confession. Rather than reference any mistreatment by the police during the interrogation, he expressly waived his right to contest the confession:

> [FLETCHER'S COUNSEL]: Do you understand that you would also have the right to present any defenses that you may have had . . . A legal defense would be if you felt that the police illegally searched you, illegally arrested you, illegally searched your home, illegally took a confession from you. Something like that. And, in your case, there was a confession given so, if you felt that that was illegally taken, by pleading guilty, you're giving up your right to challenge your confession. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

Pet. Ex. 30 at 11. Significantly, at the hearing on Fletcher's motion to withdraw his guilty plea, Fletcher's counsel stated that Fletcher wanted to challenge the confession based on the alleged promise of a reduced sentence, but made no mention of a challenge based on physical assault by the detectives. *See* Pet. Ex. 40 at 9-10, ECF No. 1-41. Where Fletcher failed to mention any

injuries sustained while in police custody when asked by police, at his guilty plea, or at the hearing on his motion to withdraw his guilty plea, the Court cannot conclude that Fletcher's purported evidence of physical coercion is so compelling as to establish actual prejudice sufficient to overcome the procedural default, or to render Fletcher's counsel ineffective for failing to further investigate the confession or file a motion to suppress. *See Premo*, 562 U.S. at 124.

This conclusion is bolstered by the fact that Fletcher's counsel had balanced the potential benefits of seeking to invalidate the confession against the potential benefits of a favorable plea agreement. Defense counsel negotiated a plea agreement under which Fletcher would cooperate with the government and receive a sentence of life imprisonment with all but 25 years suspended, and a concurrent 20 year sentence on the firearms charge. Counsel's consideration of the potential for a favorable plea agreement in assessing whether to pursue a challenge to the confession is evident from his later discussions with Fletcher relating to a possible motion to withdraw his guilty plea and subsequent motion to suppress the confession, in which defense counsel told Fletcher that the plea agreement was "a very good deal, and it gives you a chance to have a life outside of the prison walls." Pet. Ex. 36 at 1, ECF No. 1-37. Fletcher's counsel further noted that if Fletcher lost a motion to suppress, he would likely lose at trial and spend the rest of his life in prison. *Id.* Thus, defense counsel's decision not to pursue a strategy of challenging the confession was based on a determination that a favorable plea agreement was in Fletcher's best interests under the circumstances.

The Supreme Court has cautioned that the inherent uncertainty in plea negotiations make it especially difficult for a reviewing court, with the benefit of hindsight, to find that counsel's performance was constitutionally deficient. In *Premo*, the petitioner sought *habeas* relief on the

grounds that his attorney failed to file a motion to suppress his confession prior to recommending a plea offer.  *Premo*, 562 U.S. at 119.  Noting that "defense attorneys must make careful strategic choices in balancing opportunities and risks," the Supreme Court found that "Moore's counsel made a reasonable choice to opt for a quick plea bargain" that afforded his client the minimum sentence allowed by law for the charged offense.  *Id.* at 119, 124-25, 127; *see also Thacker v. Workman*, 678 F.3d 820, 842, 846 (10th Cir. 2012) (denying a procedurally defaulted *habeas* petition and finding that counsel's recommendation that the defendant plead guilty despite his claim that he suffered from a severe mental illness was not ineffective assistance of counsel based on the reasoning of *Premo*).  Thus, in assessing ineffective assistance of counsel claims where the attorney recommended a guilty plea, courts must consider that securing favorable terms may require accepting the risk that additional information, such as the photographs more recently obtained by Fletcher, may later come to light that would weaken the prosecution's case.  *See Premo*, 562 U.S. at 124-25.  Particularly when the availability of a favorable plea agreement is considered, defense counsel's strategy of pursuing such a resolution rather than suppression of the confession was not deficient.

Finally, Fletcher also asserts that his defense attorney should have informed him more specifically of additional grounds by which to challenge his confession.  Specifically, he asserts that he was 16 years old at the time of his interrogation, that he had requested to speak to a lawyer and his mother, and that he was presented with a document listing death as the penalty for first-degree murder.  Correspondence from Fletcher's counsel after Fletcher's guilty plea reveals that he had, in fact, considered some of these issues but had concluded that "[t]here is no indication you asked to speak to an attorney prior to answering any questions," "that the police coerced you into making a statement, or that they misrepresented what you could be facing in

terms of a possible punishment." Pet. Ex. 36 at 1. Indeed, there is no independent evidence that Fletcher requested an attorney or a parent, and the maximum penalty for first-degree murder was the death penalty. *See* 2013 Md. Laws Ch. 156 (repealing death as a penalty for first-degree murder in 2013). As a result, Fletcher's counsel did "not believe there are grounds to suppress your statement" and told Fletcher that "it is highly unlikely we would be successful in suppressing your statement." Pet. Ex. 37, ECF No. 38. Particularly in light of defense counsel's strategy of pursuing a favorable plea agreement, such a conclusion was not deficient. Moreover, even combined with the purported new evidence relating to alleged promises of leniency and coercion, Fletcher has not shown how awareness of these additional factors would have led to a successful motion to suppress, such that he was actually prejudiced by any lack of discussion about them.

Accordingly, the Court finds that the Stanton Statement and Fletcher's confession do not provide a basis for finding actual prejudice, arising from alleged ineffective assistance of counsel, sufficient to excuse the procedural default. Fletcher has therefore failed to cure his procedural default, such that the Court will not grant the Petition based on the ineffective assistance of counsel claims.

## IV. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to Fletcher, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed.

A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects

constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is denied on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling," *Id.*

Fletcher's claims have been dismissed on both substantive and procedural grounds. Upon review of the record, this Court finds that Fletcher has not made the requisite showing. The Court therefore declines to issue a Certificate of Appealability. Fletcher may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus is DENIED. The Court declines to issue a Certificate of Appealability. A separate Order shall issue.

Date: March 8, 2018

THEODORE D. CHUANG
United States District Judge